888 F.2d 459
 132 L.R.R.M. (BNA) 2813, 113 Lab.Cas. P 11,633
 Peggy FARRELL, Ron Lindsay, Gloria McCullar and Karen Poag,
Plaintiffs-Appellants,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN & HELPERS OF AMERICA (AIRLINE
DIVISION), Defendant-Appellee.
 No. 89-1133.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 18, 1989.
Decided Oct. 30, 1989.
 
 1
 Barbara Harvey, Detroit, Mich., for plaintiffs-appellants.
 
 
 2
 James P. Hoffa, Hoffa, Chodak, Detroit, Mich., Gary S. Witlen (argued), International Broth. of Teamsters, Legal Dept., Washington, D.C., for defendant-appellee.
 
 
 3
 Before JONES and MILBURN, Circuit Judges, and HIGGINS, District Judge.*
 
 
 4
 HIGGINS, District Judge.
 
 
 5
 This is an appeal from a decision of the District Court of the Eastern District of Michigan denying appellants' request for an injunction under the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. Sec. 401 et seq.).
 
 
 6
 The appellants are flight attendants for Northwest Airlines, based in Detroit, Michigan, and Memphis, Tennessee. All of them had originally worked for Republic Airlines. Their services were retained when Republic was merged into Northwest in 1986.
 
 
 7
 Before the merger, employees of Republic had been represented in labor negotiations by the Association of Flight Attendants. Pre-merger employees of Northwest were represented by the appellee, International Brotherhood of Teamsters. After the merger, Northwest recognized the Teamsters as the collective bargaining representative for the merged unit. The AFA did not quietly accept this decision, and a certification campaign resulted. In order to win over the former Republic employees, the Teamsters offered to create new locals in Memphis and Detroit. (Teamsters activity in those cities had previously been directed by the Local in Minneapolis.) The Teamsters pledged that the proposed new locals would enjoy the usual right of electing representatives to a contract negotiations committee and sundry other union committees. The Teamsters also agreed to waive the new members' dues requirement pending final approval of a contract between post-merger Northwest Airlines and the union. The Teamsters prevailed in the certification election.
 
 
 8
 But contract talks between the Teamsters and Northwest bogged down, whereupon the Teamsters allegedly reneged on their pledge to the appellants by demanding dues from them. The union filed an action in the Eastern District of New York to collect the dues, but it was dismissed, the judge finding that the dues had indeed been waived. Int'l Brotherhood of Teamsters v. Northwest Airlines, Inc., No. 87-CIV-1625 (E.D.N.Y., Aug. 7, 1987).
 
 
 9
 Appellants filed the present action in the Eastern District of Michigan on November 1, 1988, to enforce their rights to conduct their union affairs through local unions with properly elected local officials. Under the provisions of LMRDA, 29 U.S.C. Sec. 411(a)(1), the complaint sought an injunction to compel the Teamsters to form locals for the appellants' use and schedule local elections. The complaint also asserted pendent state common law claims based on contract alleged to arise under the Teamsters' constitution.
 
 
 10
 On November 21, 1988, in the wake of the appellants' filing, the Teamsters chartered new local 2757 in Detroit to serve Northwest employees in both Detroit and Memphis. On the same day, the Teamsters placed the new local under a trusteeship, which, of course, precluded any election of local officers.
 
 
 11
 The district court, after fruitless attempts to get the parties to agree on a timetable for electing local officers, entered an order dated December 21, 1988, dismissing the action, having previously indicated that the formation of a new local had mooted the prayer for that relief, that ordering an election was not warranted because the appellants had made no showing of irreparable harm, and that under the LMRDA the court lacked the power to terminate the trusteeship.
 
 
 12
 Appellants contend that the conduct of the Teamsters deprives them of their rights under Title I of the LMRDA (often called the "Member's Bill of Rights.") At the heart of this contention is the following portion of the LMRDA, codified at 29 U.S.C. Sec. 411(a)(1):
 
 
 13
 Sec. 411. Bill of rights; constitution and bylaws of labor organizations
 
 
 14
 (a)(1) Equal rights
 
 
 15
 Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
 
 
 16
 The principal difficulty confronting the appellants is that in the present action a trusteeship was imposed by the national union. Principles governing the establishment and maintenance of trusteeships are set forth in Title III of the LMRDA, codified at 29 U.S.C. Sec. 461 et seq.
 
 
 17
 The principal issue before the Court is this: may the appellants who maintain that the parent union is violating their Title I rights by means of trusteeship sue to protect those rights without addressing the question of the trusteeship's validity?
 
 
 18
 The appellants seem to be arguing the affirmative. Although their brief disparages the trusteeship as an "unlawful" strategem to cut off the district court's remedial powers, their counsel admitted at oral argument that the issue of validity vel non as to the trusteeship was not decided by the district court and is not before this Court now. Appellants' theory is that Sec. 411(a)(1) creates an independent remedy for such grievances as are alleged, obviating any procedures under Title III.
 
 
 19
 This Court disagrees. Such a rule would reduce to surplusage those positions of Title III which provide a specific remedy for improper establishment of trusteeships, especially 29 U.S.C. Sec. 464(a), which states:
 
 Sec. 464. Civil action for enforcement
 
 20
 (a) Complaint; investigation; commencement of action by Secretary, member or subordinate body of labor organization; jurisdiction
 
 
 21
 Upon the written complaint of any member or subordinate body of a labor organization alleging that such organization has violated the provisions of this subchapter (except section 461 of this title) the Secretary shall investigate the complaint and if the Secretary finds probable cause to believe that such violation has occurred and has not been remedied he shall, without disclosing the identity of the complainant, bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate. Any member or subordinate body of a labor organization affected by any violation of this subchapter (except section 461 of this title) may bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate.
 
 
 22
 The statute further provides, in 29 U.S.C. Sec. 464(c), that a trusteeship receives a presumption of validity for eighteen months, "except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable" under the Act.
 
 
 23
 Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. ----, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989), relied on by the appellants, is not contra. In that case, a business agent for a union local was removed from his position by a trustee who had been installed by the parent union. The removal was in retaliation for statements the business agent had made in opposition to a dues increase supported by the trustee.
 
 
 24
 The Supreme Court held that the existence of a valid trusteeship did not excuse the dismissal of the agent in reprisal for exercising his Title I free speech rights. The Court said:
 
 
 25
 [W]e find nothing in the language of the LMRDA or its legislative history to suggest that Congress intended Title I rights to fall by the wayside whenever a trusteeship is imposed ... [A] trustee's authority under Title III ordinarily should be construed in a manner consistent with the protections provided in Title I.
 
 
 26
 Lynn, 109 S.Ct. at 645-46.
 
 
 27
 It does not follow, however, that after Lynn aggrieved union members no longer need bother with the procedures prescribed in Title III. In the first place, in Lynn the validity of the trusteeship itself was conceded. Hence, the question of the proper means of contesting its validity never even arose.
 
 
 28
 Moreover, the present case does not involve union members' free speech rights, but the right of a local to a full slate of locally-elected officials. Free speech rights are fully compatible with the existence of a trusteeship. Election of local officials, however, is prima facie inconsistent with control of the local by a trustee. The whole point of a trusteeship is that someone has judged that control of the local by a central authority is necessary.
 
 
 29
 In short, Title III, not Title I, provides these appellants with their appropriate remedy. A determination of the validity vel non of the trusteeship must precede any determination of the appellants' right to hold local elections. If the trusteeship in the present case is a fraud, the statute provides a mechanism for the appellants to prove it and thereafter recover their Title I rights. But, let them not put the cart before the horse.
 
 
 30
 The judgment of the district court is modified such that appellants' action is dismissed without prejudice to any remedy available to them under Title III of the Act. And, as modified, the judgment is affirmed.
 
 
 
 *
 The Honorable Thomas A. Higgins, United States District Judge for the Middle District of Tennessee, sitting by designation